IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CV-212-D

COLORADO BANKERS LIFE )
INSURANCE COMPANY, and )
SOUTHLAND NATIONAL )
REINSURANCE CORPORATION, )
 )
               Plaintiffs, )
 )
v. ) **ORDER**
 )
GBIG HOLDINGS, LLC, )
 )
               Defendant. )

On May 26, 2022, Colorado Bankers Life Insurance Company and Southland National Reinsurance Corporation (collectively, "plaintiffs") filed a complaint against GBIG Holdings, LLC ("defendant" or "GBIG") alleging breach of contract, conversion, embezzlement, and violations of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA") [D.E. 1]. On July 21, 2022, GBIG moved to dismiss the conversion, embezzlement, and UDTPA claims [D.E. 13] and filed a memorandum in support [D.E. 14]. See Fed. R. Civ. P. 12(b)(6). On September 13, 2022, plaintiffs responded in opposition [D.E. 16]. On September 27, 2022, GBIG replied [D.E. 17]. As explained below, the court grants GBIG's motion to dismiss the conversion, embezzlement, and UDTPA claims.

I.

This case concerns a Tax Sharing Agreement ("TSA") between GBIG, the parent company, and its subsidiaries, plaintiffs. See Compl. ¶ 6. The TSA and associated consolidated tax return allowed GBIG and its subsidiaries, including plaintiffs, "to combine, share, or consolidate profits

and losses in order to minimize GBIG's consolidated tax liability." Id. at ¶ 12. The TSA created an "equitable basis for determining the tax amount to be paid by or owed to the parties to the TSA on account of their inclusion in GBIG's consolidated tax return." Id. at ¶ 10.

Plaintiffs allege that the TSA requires "[a]ny payments or refunds due to a party by reason of amendment to, or examination of, a previously filed tax return, shall be remitted to the appropriate party no later than 45 days from the receipt of the funds or credit by GBIG." Id. at ¶ 19 (alteration in original) (quotation omitted). "Where GBIG receives a tax refund, that tax refund amount should be distributed among the Members according to their tax share." Id. at ¶ 20. Plaintiffs allege that in its 2019 Tax Return, GBIG used "Plaintiffs' tax losses of more than $83 million collectively to reduce its $3,058,932 tax liability to zero." Id. at ¶ 26. Plaintiffs also allege that GBIG failed to make any payments required under the TSA to plaintiffs following the 2019 Tax Return. See id. at ¶ 27. Instead, GBIG took the funds provided by the tax return and distributed them to an affiliated entity, Global Growth. Id. at ¶ 52.

In January 2021, "Plaintiffs communicated with GBIG that the Tax Refund belonged to and was owed to Plaintiffs. Plaintiffs' representatives had numerous telephone and email communications with GBIG concerning the return of the Tax Refund and payment of the Tax Loss Receivable." Id. at ¶ 39. During the communications, "GBIG made various excuses for its failure to pay the Tax Refund and Tax Loss Receivable between the time the Tax Return was filed" and the filing of this action. Id. at ¶ 40. Plaintiffs allege that "GBIG's excuses were made merely to delay payment of the Tax Refund and Tax Loss Receivable so that GBIG could use the funds for its own purposes." Id. at ¶ 41. GBIG "has not paid Plaintiffs the Tax Refund" or the "Tax Loss Receivable." Id. ¶¶ 48–49. Accordingly, plaintiffs filed this action.

2

II.

GBIG concedes that plaintiffs plausibly allege a breach of contract claim, but moves to dismiss the conversion, embezzlement, and UDTPA claims under Rule 12(b)(6). See [D.E. 13]. A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[ ] [its] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court may also consider a document submitted by a moving party if it is "integral to the complaint and there

3

is no dispute about the document's authenticity." Goines, 822 F.3d at 166. Additionally, a court may take judicial notice of public records without converting the motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

A.

GBIG contends that the economic loss rule bars plaintiffs' conversion claim. See [D.E. 14] 4. Plaintiffs respond that the economic loss rule does not bar their conversion claim [D.E. 16] 6–8. Under the economic loss rule, "[o]rdinarily, a breach of contract does not give rise to a tort action by the promisee against the promisor." N.C. State Ports Auth. v. Lloyd A. Fry Roofing Co., 294 N.C. 73, 81, 240 S.E.2d 345, 350 (1978), rejected in part on other grounds by Trs. of Rowan Tech. Coll. v. J. Hyatt Hammond Assocs., Inc., 313 N.C. 230, 328 S.E.2d 274 (1985); Braswell Egg Co. v. Poultry Mgmt. Sys., Inc., 481 F. Supp. 3d 528, 542 (E.D.N.C. 2020); Gen. Cas. Co. of Wis. v. Murphy-Hoffman Co., No. 5:20-CV-376, 2020 WL 6173547, at *2 (E.D.N.C. Oct. 21, 2020) (unpublished); CDI Corp. v. HCL Am., Inc., No. 5:17-CV-550, 2019 WL 1083775, at *3 (E.D.N.C. Mar. 7, 2019) (unpublished); Wilkins v. Wachovia Corp., No. 5:10-CV-249, 2011 WL 1134706, at *2 (E.D.N.C. Mar. 24, 2011) (unpublished). The economic loss rule arises because "parties to a contract do not thereby become each others' fiduciaries; [therefore,] they generally owe no special duty to one another beyond the terms of the contract[.]" Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 347 (4th Cir. 1998) (quotation omitted); Branch Banking & Tr. Co. v. Thompson, 107 N.C. App. 53, 61, 418 S.E.2d 694, 699 (1992).

To pursue a tort claim and a breach of contract claim concerning the same conduct, "a plaintiff must allege a duty owed him by the defendant separate and distinct from any duty owed under a contract." Kelly v. Ga.-Pac., LLC, 671 F. Supp. 2d 785, 791 (E.D.N.C. 2009) (quotation

4

omitted); see Broussard, 155 F.3d at 346; Strum v. Exxon Co., 15 F.3d 327, 330–31 (4th Cir. 1994); Vanwyk Textile Sys., B.V. v. Zimmer Mach. Am., Inc., 994 F. Supp. 350, 362 (W.D.N.C. 1997); Paine, Webber, Jackson & Curtis, Inc. v. Stanley, 60 N.C. App. 511, 516–17, 299 S.E.2d 292, 295–96 (1983). Moreover, North Carolina courts have "carefully circumscribed" this independent duty requirement. Strum, 15 F.3d at 331. In so doing, North Carolina courts have strived to keep tort and contract law (including law related to warranties) within their separate spheres. Cf. East River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 871 (1986); Kelly, 671 F. Supp. 2d at 791.

North Carolina courts have developed (and the Fourth Circuit has applied) the economic loss rule, which prohibits recovery for purely economic loss in tort when a contract, a warranty, or the UCC operates to allocate risk. See, e.g., 2000 Watermark Ass'n v. Celotex Corp., 784 F.2d 1183, 1186 (4th Cir. 1986) (applying South Carolina law); Kelly, 671 F. Supp. 2d at 791–96 (applying North Carolina law); Wilson v. Dryvit Sys., Inc., 206 F. Supp. 2d 749, 753–54 (E.D.N.C. 2002) (applying North Carolina law); N.C. State Ports Auth., 294 N.C. at 81, 240 S.E.2d at 350. A loss falls into this rule when the only alleged damage or injury is to the product itself and not to any person or separate property. See B & B Crane Serv., LLC v. Dragados USA, Inc., No. 7:19-CV-98, 2019 WL 5295731, at *4 (E.D.N.C. Oct. 18, 2019) (unpublished); Kelly, 671 F. Supp. 2d at 791; Wilson, 206 F. Supp. 2d at 753.

Plaintiffs argue that "under North Carolina law, a promisee may maintain a tort action against the promisor if the injury was 'a conversion of the property of the promisee, which was the subject of the contract, by the promisor.'" [D.E. 16] 6 (quoting Ellis v. La.-Pac. Corp., 699 F.3d 778, 783–84 (4th Cir. 2012)); see Definitive Staffing Sols., Inc. v. Staffing Advantage, LLC, No. 7:18-CV-187, 2019 WL 3660878, at *6 (E.D.N.C. Aug. 6, 2019) (unpublished); Ada Liss Grp. v. Sara

5

Lee Corp., No. 06CV610, 2010 WL 3910433, at *10 (M.D.N.C. Apr. 27, 2010) (unpublished). However, the Fourth Circuit's decision in Legacy Data Access, Inc. v. Cadrillion, LLC, 889 F.3d 158 (4th Cir. 2018), forecloses plaintiffs' argument.

In Legacy Data, the Fourth Circuit analyzed whether "North Carolina's economic loss rule bars Plaintiffs from asserting conversion, a tort claim, for what is nothing more than a breach of contract." Id. at 164. The Fourth Circuit explicitly rejected the argument that North Carolina law exempted a conversion claim from the economic loss rule. See id. at 165–66. According to the Fourth Circuit, North Carolina case law established that "the economic loss rule does not prohibit tort claims against a defendant who, in addition to and independent of his contractual duty, is charged by law, as a matter of public policy, with the duty to use care in the safeguarding of the property . . . as in the case of a common carrier, an innkeeper, or other bailee." Id. at 165 (quotation omitted) (emphasis in original). The Fourth Circuit, however, found no support in North Carolina law for the position that "[e]very simple failure to pay an amount due under a contract, such as a monthly mortgage payment, would potentially give rise to a conversion claim." Id. at 166.

In opposition, plaintiffs cite Foodbuy, LLC v. Gregory Packaging, Inc., 987 F.3d 102, 121 (4th Cir. 2021), and argue that the Fourth Circuit supposedly has now recognized that "the North Carolina Court of Appeals has limited the application of the [economic loss rule] to negligence claims." [D.E. 16] 7 n.3 (cleaned up). In support, plaintiffs cite Bradley Woodcraft, Inc. v. Bodden, 251 N.C. App. 27, 795 S.E.2d 253, 258 (2016).

In Foodbuy, the Fourth Circuit noted that Legacy Data specifically "dismiss[ed] the tort claim for conversion under the" economic loss rule. Id. Moreover, in Foodbuy, the Fourth Circuit did not hold that Legacy Data was wrongly decided or question the dismissal of the conversion claim. Foodbury, 987 F.3d at 121. Indeed, in Legacy Data, the Fourth Circuit addressed Bradley

6

Woodcraft. See Legacy Data, 889 F.3d at 166. Furthermore, in Foodbuy, the Fourth Circuit simply declined to extend Legacy Data's holding to bar a UDTPA claim under the economic loss rule. Foodbuy, 987 F.3d at 121–22. Because the Fourth Circuit in Foodbuy applied the holding in Legacy Data and did not overrule or abrogate Legacy Data's conclusion regarding a materially indistinguishable conversion claim, Legacy Data controls the outcome of the conversion claim in this case.

The complaint alleges that "GBIG wrongfully converted the Tax Refund by refusing to remit the Tax Refund to Plaintiffs." Compl. ¶ 74. GBIG's underlying duty to remit the Tax Refund, however, arose solely from the TSA. Moreover, the complaint alleges that GBIG "instead distributed, loaned, or otherwise transferred the Tax Refund to Global Growth for that affiliate's use." Id. at ¶ 75. As in Legacy Data, plaintiffs' conversion claim arises from GBIG's duties under the contract. Absent the TSA, there was no duty of GBIG to refrain from making payments or transfers to Global Growth. Therefore, plaintiffs have failed to plausibly allege that GBIG breached an additional or independent duty beyond the TSA. Thus, the economic loss rule bars plaintiffs' conversion claim, and the court dismisses it. See, e.g., Legacy Data, 889 F.3d at 165–66.

B.

Plaintiffs assert an embezzlement claim. See Compl. ¶¶ 79–86. N.C. Gen. Stat. § 1-538.2 creates civil liability for "[a]ny person, other than an unemancipated minor, who commits an act that is punishable under," among other things, North Carolina's criminal embezzlement statute, N.C. Gen. Stat.§ 14-90. GBIG responds that N.C. Gen. Stat. § 14-90 (through N.C. Gen. Stat. § 1-538.2) does not apply to GBIG in this case. See [D.E. 14] 5–7.

According to plaintiffs, general principles of statutory interpretation extend civil liability for embezzlement to GBIG. See [D.E. 16] 8–11; Compl. ¶ 81 ("GBIG is a 'person' as set forth in N.C.

7

Gen. Stat. § 14-90."). In support, plaintiffs note that the "word 'person' shall extend and be applied to bodies politic and corporate, as well as to individuals, unless the context clearly shows to the contrary." [D.E. 16] 8 (quoting N.C. Gen. Stat. § 12-3(6)) (emphasis omitted); see also N.C. Gen. Stat. § 12-3 ("In the construction of all statutes the following rules shall be observed, unless such construction would be inconsistent with the manifest intent of the General Assembly, or repugnant to the context of the same statute[.]"); cf. State ex rel. Stein v. Kinston Charter Acad., 379 N.C. 560, 580, 866 S.E.2d 647, 662 (2021) (applying N.C. Gen. Stat. § 12-3(6) to hold a school liable under the North Carolina False Claims Act); Jackson v. Housing Authority of High Point, 316 N.C. 259, 264, 341 S.E.2d 523, 526 (1986) (applying N.C. Gen. Stat. § 12-3(6) to North Carolina's wrongful death statute). Plaintiffs argue that this statutory language and these cases support reading corporations into the class of persons included with N.C. Gen. Stat. § 14-90.

Plaintiffs also argue that excluding corporations from the definition of person under section 14-90 would conflict with North Carolina law. See [D.E. 16] 9–10. In support, plaintiffs cite N.C. Gen. Stat. § 14-254(a), which criminalizes embezzlement and other forms of "[m]alfeasance of corporation officers and agents." See N.C. Gen. Stat. § 14-254(a).[1] Moreover, plaintiffs note that section 14-254(b) defines "person" to mean "a natural person, association, consortium, corporation, body politic, partnership, or other group, entity, or organization." Id. § 14-254(b). Plaintiffs reason

---

[1] N.C. Gen. Stat § 14-254(a) provides:

> If any president, director, cashier, teller, clerk or agent of any corporation shall embezzle, abstract or willfully misapply any of the moneys, funds or credits of the corporation, or shall, without authority from the directors, issue or put forth any certificate of deposit, draw any order or bill of exchange, make any acceptance, assign any note, bond, draft, bill of exchange, mortgage, judgment or decree, or make any false entry in any book, report or statement of the corporation with the intent in either case to injure or defraud or to deceive any person, or if any person shall aid and abet in the doing of any of these things, he shall be punished as a Class H felon.

8

that because "aiding and abetting liability does not ... itself create a separate offense," that aiding and abetting and the offense of embezzlement under section 14-90 should not be subject to different definitions. Cf. United States v. Day, 700 F.3d 713, 720 (4th Cir. 2012) (cleaned up) (analyzing aiding and abetting under 18 U.S.C. § 2).

The parties have not cited a case where a court has applied N.C. Gen. Stat. § 14-90 to a corporate defendant directly or through N.C. Gen. Stat. § 1-538.2. In support of not applying section 14-90 (through section 1-538.2) to GBIG, GBIG cites N.C. Gen. Stat. § 14-90(a), which states that criminal liability for embezzlement is limited to "any person":

(1) Exercising a public trust.
(2) Holding a public office.
(3) Who is a guardian, administrator, executor, trustee, or any receiver, or any other fiduciary, including, but not limited to, a settlement agent, as defined in [N.C. Gen. Stat. §] 45A-3.
(4) Who is an officer or agent of a corporation, or any agent, consignee, clerk, bailee or servant, except persons under the age of 16 years, of any person.

N.C. Gen. Stat. § 14-90(a). GBIG then argues that a "corporation cannot do or be any of those things" listed in section 14-90(a). [D.E. 14] 6.

Section 14-90(a)(3) explicitly cross-references N.C. Gen. Stat. § 45A-3 to provide the definition for the term "settlement agent" in section 14-90(a)(3). N.C. Gen. Stat. § 14-90(a)(3). Section 45A-3(15) states that, "unless the context otherwise requires" a settlement agent "includes any individual, corporation, [or] partnership...." N.C. Gen. Stat. § 45A-3(15). At a minimum, this explicit cross reference clarifies that a corporation can be a settlement agent under section 14-90(a)(3). But just because it is theoretically possible for a corporation to be held liable under section 14-90(a)(3) as a "settlement agent" does not mean that the General Assembly intended for a corporation such as GBIG to be liable under section 14-90 (through section 1-538.2) in this case. Indeed, a corporation cannot legally hold public office or exercise a public trust as required by

9

sections 14-90(a)(1–2). See, e.g., N.C. Const. art. VI, § 6. Even if a corporation could be liable as a "settlement agent" under section 14-90(a)(3), the General Assembly did not extend criminal liability to a corporation under every subsection of section 14-90.

Sections 14-90(a)(4) and (b)(2)(i) demonstrate that section 14-90 does not extend criminal liability to GBIG in this case. Section 14-90(a)(4) covers a person "[w]ho is an officer or agent of a corporation, or any agent, consignee, clerk, bailee or servant, except persons under the age of 16 years, of any person." N.C. Gen. Stat. § 14-90(a)(4). If the court considers a corporation to be a person under this subsection, the court would be creating a redundancy. Section 14-90(a)(4) specifies two classes of agents who can potentially be liable: "agent of a corporation" or "any agent ... of any person." Id. Moreover, section 14-90(b)(2)(i) explicitly notes that the embezzled goods can "belong[] to any other person or corporation." Id. § 14-90(b)(2)(i). If the General Assembly intended "person" to include a corporation in this specific context of section 14-90, there would be no reason to explicitly include "agent of a corporation" or clarify that the goods may belong to "any other person or corporation." Id. §§ 14-90(a)(4), (b)(2)(i) (emphasis added).

The Supreme Court of North Carolina has explicitly instructed courts to avoid interpreting North Carolina statutes in a way that makes certain sections redundant or meaningless. See HCA Crossroads Residential Ctrs., Inc. v. N.C. Dep't of Hum. Res., 327 N.C. 573, 578, 398 S.E.2d 466, 470 (1990); cf. Rimini St., Inc. v. Oracle USA, Inc., 139 S. Ct. 873, 881 (2019). The only way to avoid creating a redundancy under section 14-90 and not render "agent of a corporation" meaningless is to exclude GBIG from the definition of "person" under section 14-90 in this case.

The aiding and abetting reference in N.C. Gen. Stat. §14-254(a) also undermines plaintiffs' argument. Although N.C. Gen. Stat. §14-254(b) explicitly includes corporations under its definition of "person," section 14-254(a) does not contemplate that the underlying embezzlement can be

10

committed by a "person." Rather, section 14-254(a) applies only to embezzlement committed by "any president, director, cashier, teller, clerk or agent of any corporation[.]" N.C. Gen. Stat. §14-254(a). Section 14-254 uses the term "person" only to define the victim of embezzlement (i.e., "to injure or defraud or to deceive any person") or a potential aider or abettor of embezzlement (i.e., "if any person shall aid and abet in the doing of any of these things"). Id. The General Assembly intentionally included corporations as victims or potential aider or abettors and excluded corporations from its definition of "any president, director, cashier, teller, clerk or agent of any corporation[.]" Id.

Just as section 14-254(a) considers an "agent of any corporation" to be a potential principal of embezzlement, section 14-90(a)(4) uses the phrase "agent of any corporation" in the same manner. If the court were to hold, as plaintiffs request, that a corporation can qualify as an "agent of any corporation" under section 14-90(a)(4) while a corporation cannot qualify as an "agent of any corporation" under section 14-254(a), the court would be "reading conflicts into statutes." Epic Sys. Corp. v. Lewis, 138 S. Ct. 1612, 1630 (2018). By holding that GBIG cannot be an "agent of any corporation" under section 14-90 in this case, the court avoids a conflict with section 14-254(a).

In opposition to this conclusion, plaintiffs cite State ex rel. Stein for the proposition that "the fact that the [embezzlement statutes] do[] not contain a definition of a 'person' is entitled to little weight in our analysis given that such a definition, which is applicable to all statutory provisions, appears in N.C.G.S. § 12-3(6)." [D.E. 16] 9 (alterations in original). Plaintiffs then argue that Stein means that corporations are "persons" under section 14-90.

The court rejects plaintiffs' argument. Notably, Stein did not involve section 14-90. Rather, Stein concerned the North Carolina False Claims Act. Stein, 379 N.C. at 580, 866 S.E.2d at 662. Even if Stein stands for the principle that N.C. Gen. Stat. § 12-3 applies to all North Carolina

11

statutes, section 12-3 merely instructs courts to include corporations under the definition of person unless the context shows to the contrary. See N.C. Gen. Stat. § 12-3. Because the context of section 14-90 shows that GBIG does not fall within the definition of "person" under section 14-90 in this case, the court rejects plaintiffs' argument.

GBIG, as a corporation, cannot be liable for embezzlement under section 14-90 (through section 1-538.2) as alleged in the complaint. Sitting in diversity, this court "should not create or expand a State's public policy." Time Warner Ent.-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (alteration and quotation omitted); see Day & Zimmermann, Inc. v. Challoner, 423 U.S. 3, 4 (1975) (per curiam); First Protective Ins. Co. v. Rike, 516 F. Supp. 3d 513, 524–25 (E.D.N.C. 2021). Thus, the court dismisses plaintiffs' embezzlement claim.

C.

Plaintiffs assert a claim under North Carolina's UDTPA. See Compl. ¶¶ 87–94. The UDTPA provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1(a). To state an unfair and deceptive trade practices claim, a plaintiff must plausibly allege: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs. See Barbour v. Fid. Life Ass'n, 361 F. Supp. 3d 565, 573 (E.D.N.C. 2019); Kelly, 671 F. Supp. 2d at 798; SciGrip, Inc. v. Osae, 373 N.C. 409, 426, 838 S.E.2d 334, 347 (2020); Walker v. Fleetwood Homes of N.C., Inc., 362 N.C. 63, 71–72, 653 S.E.2d 393, 399 (2007). "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. A practice is deceptive if it has the capacity or tendency to deceive." Walker, 362 N.C. at 72, 653 S.E.2d at 399

12

(cleaned up). "[I]t is not necessary for the plaintiff to show fraud, bad faith, deliberate or knowing acts of deception, or actual deception, but plaintiff must show that the acts complained of possessed the tendency or capacity to mislead, or created the likelihood of deception." Gress v. Rowboat Co., 190 N.C. App. 773, 776, 661 S.E.2d 278, 281 (2008) (cleaned up); see Overstreet v. Brookland, Inc., 52 N.C. App. 444, 452–53, 279 S.E.2d 1, 7 (1981). However, a "mere breach of contract, even if intentional, is not an unfair or deceptive act[.]" Waddell v. U.S. Bank Nat'l Ass'n, 395 F. Supp. 3d 676, 684 (E.D.N.C. 2019) (collecting cases); PCS Phosphate Co. v. Norfolk S. Corp., 559 F.3d 212, 224 (4th Cir. 2009); Repress v. Crop Prod. Servs., Inc., No. 4:15-CV-00176, 2016 WL 3821163, at *5 (E.D.N.C. July 13, 2016) (unpublished); see SciGrip, 373 N.C. at 427, 838 S.E.2d at 348; Mitchell v. Linville, 148 N.C. App. 71, 75, 557 S.E.2d 620, 623–24 (2001).

GBIG contends that plaintiffs allege only a simple breach of contract and that there are not sufficient aggravating circumstances to justify plaintiff's UDTPA claim. [D.E. 14] 7–9. Plaintiffs respond that the complaint plausibly alleges "GBIG not only breached the TSA but subsequently converted, embezzled, and transferred the funds at issue, despite Plaintiffs' numerous demands for the same, to a third-party entity." [D.E. 16] 11.

Although plaintiffs have alleged facts suggesting that the alleged breach of contract was intentional, plaintiffs do not plausibly allege any actionable aggravating circumstances beyond the alleged intentional breach of the TSA. Moreover, the alleged conversion and embezzlement stem directly from the alleged intentional breach of the TSA. See Compl. ¶¶ 79–86. Allegations that GBIG knew the money belonged to plaintiffs simply support the inference that the breach was intentional, not a separate aggravating circumstance. See Waddell, 395 F. Supp. 3d at 684; SciGrip, 373 N.C. at 427, 838 S.E.2d at 348.

13

In opposition, plaintiffs argue that GBIG took the tax return money and gave it to a "third party," Global Growth, which was "owned and controlled by indicted fraudster, Greg Lindberg[.]" [D.E. 16] 2; see Compl. ¶ 88. Plaintiffs assert that GBIG and Global Growth should not be considered a "single market participant" and appear to argue that this transfer is an aggravating factor under the UDTPA. See [D.E. 16] 15 n.5 (quotation omitted). But the complaint alleges that Global Growth is an "affiliated entity" of GBIG and that the same owner controls both. Compl. ¶¶ 50, 54. For a parent corporation to take funds, even those allegedly stemming from an intentional breach of contract, and use them in an affiliated corporation is not an aggravating factor under the UDTPA. Additionally, plaintiffs do not plausibly allege that GBIG transferred the funds to Global Growth to somehow hide or mask its breach of contract or plausibly allege that the transfer was to hide the funds or make them otherwise unreachable. Therefore, simply because GBIG allegedly used the tax refund proceeds to help fund an affiliated corporation does not constitute an aggravating factor under the UDTPA.

Next, plaintiffs cite Makadia v. Cont'l Waste Mgmt., LLC, No. 5:16-CV-00257, 2016 WL 6601440, at *3 (E.D.N.C. Nov. 7, 2016) (unpublished), where the court found sufficient aggravating circumstances due to "both the existence of an independent intentional tort, conversion, as well as intentional deception by Defendants." However, as discussed, a simple conversion claim arising from a breach of contract claim no longer constitutes an independent tort under Legacy Data. See Legacy Data, 889 F.3d at 165–66. Moreover, and in any event, the plaintiffs in Makadia plausibly alleged that defendants intentionally lied to plaintiffs about the purchase of the property, intentionally lied to plaintiffs that all the supporting documentation for the purchase had been signed and executed, and intentionally failed to enter a lien for plaintiffs despite repeated requests to do so. See Makadia, 2016 WL 6601440, at *3.

14

Here, plaintiffs have failed to allege aggravating circumstances anywhere near Makadia. Simply put, the general factual allegations in the complaint involve claims indistinguishable from the underlying breach of contract, which cannot by themselves support a UDTPA claim. See PCS Phosphate Co., 559 F.3d at 224; Repress, 2016 WL 3821163, at *5; Rider v. Hodges, 255 N.C. App. 82, 90–91, 804 S.E.2d 242, 249 (2017); Mitchell, 148 N.C. App. at 75, 557 S.E.2d at 623–24. Thus, the court dismisses plaintiffs' UDTPA claim.

III.

In sum, the court GRANTS defendant's motion to dismiss [D.E. 13] and DISMISSES WITH PREJUDICE plaintiffs' conversion, embezzlement, and UDTPA claims. Plaintiffs can proceed with their breach of contract claim.

SO ORDERED. This 23 day of January, 2023.

JAMES C. DEVER III
United States District Judge